# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# KNOXVILLE DIVISION

| | | |
|---|---|---|
| Shasta Hubbs, as parent and next friend of her minor daughter, K.H., | ) ) ) | |
| Rachel Silvan, as parent and next friend of her minor daughter, I.S., | ) ) ) ) | |
| Rachel Silvan, as parent and next friend of her minor daughter, S.S., | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. |
| vs. | ) ) | |
| KNOX COUNTY BOARD OF EDUCATION a/k/a KNOX COUNTY SCHOOLS a/k/a KNOX COUNTY SCHOOL DISTRICT; and DOES 1 through 50, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT

The above-captioned Plaintiffs, Shasta Hubbs, as parent and next friend of her minor daughter, K.S., Rachel Silvan, as parent and next friend of her minor daughter, I.S., and Rachel Silvan, as parent and next friend of her minor daughter, S.S., ("Plaintiffs"), respectfully file this Complaint against Defendants, Knox County Board of Education a/k/a

1

Knox County Schools a/k/a Knox County School District and Does 1 through 50, ("Defendants"), and allege as follows:

## STATEMENT OF THE CASE

1. This action is posed for declaratory and injunctive relief. Defendants have violated (1) Title IX of the Education Amendment of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX") and the regulations adopted thereto, and (2) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983, by illegally and intentionally denying Plaintiffs' daughters the equal treatment and benefits that must necessarily accompany an equal opportunity to participate in athletics.

2. Defendants' denial of equal treatment and benefits constitutes intentional discrimination against the Plaintiffs' daughters based solely on their gender. Specifically, Defendants have discriminated against Plaintiffs' daughters in the following areas: (1) funding of athletics; (2) provision of equipment and supplies; (3) travel and/or per diem; (4) provision of locker rooms and/or facilities for both practice and competition; and (5) provision of training facilities and services.

3. This action seeks to redress the deprivation of Plaintiffs' daughters' rights to receive the equal treatment and benefits which must necessarily accompany an equal opportunity to participate in interscholastic and other school-sponsored athletics. This action seeks a declaratory judgment that Defendants have violated Plaintiffs' daughters' rights under federal law. This action further seeks an injunction requiring Defendants to

immediately cease their discriminatory practices and to remedy the effects of their discriminatory practices.

4. Plaintiffs seek injunctive relief which, among other things, requires that Defendants provide Plaintiffs' daughters with treatment and benefits equivalent to those provided to the boys' athletic teams at Knox County Schools.

## JURISDICTION AND VENUE

5. The Plaintiffs' first claim arises under 20 U.S.C. § 1681, *et seq*. and its interpreting regulations. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

6. The Plaintiffs' second claim arises under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4).

7. Jurisdiction for declaratory and other relief is invoked pursuant to 28 U.S.C. §§ 2201(a) and 2202.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b). These claims arose in Knox County, Tennessee, which is within the jurisdiction of this Court.

## THE PARTIES

9. Plaintiff Shasta Hubbs is the parent of K.H., a 15-year-old rising 10th grade student at Bearden High School, in Knox County Schools. K.H. is a talented athlete who participates in softball and bowling. She has endured the unequal treatment and benefits

3

directed by Knox County Schools toward its female athletes. Shasta Hubbs and K.H. are residents of Knoxville, Tennessee, which is within the jurisdiction of this Court.

10. Plaintiff Rachel Silvan is the parent of I.S., a 17-year-old rising 12th grade student at Bearden High School, in Knox County Schools. I.S. is a talented athlete who participates in softball. She has endured the unequal treatment and benefits directed by Knox County Schools toward its female athletes. Rachel Silvan and I.S. are residents of Knoxville, Tennessee, which is within the jurisdiction of this Court.

11. Plaintiff Rachel Silvan is the parent of S.S., a 15-year-old rising 10th grade student at Bearden High School, in Knox County Schools. S.S. is a talented athlete who participates in softball and lacrosse. She has endured the unequal treatment and benefits directed by Knox County Schools toward its female athletes. Rachel Silvan and S.S. are residents of Knoxville, Tennessee, which is within the jurisdiction of this Court.

12. Defendant Knox County Schools is authorized by Tennessee law to operate and control Bearden High School, where the Plaintiffs' daughters are students. Therefore, Defendants' conduct is considered state action under 42 U.S.C. §1983. Knox County Schools is located in Knox County, Tennessee, and a substantial part of the events or omissions giving rise to this lawsuit occurred in Knox County, which is within the jurisdiction of this Court. Since the passage of Title IX, Knox County Schools has received and continues to receive federal financial assistance and the benefits therefrom. Therefore,

all programs at Knox County Schools, including athletics, are subject to the requirements of Title IX.

13. The named Plaintiffs are ignorant of the true names and capacities of Does 1-50, but believe them to be employees of Knox County Schools or members of the Knox County Board of Education. Plaintiffs will seek to amend this Complaint to set forth their true names and capacities when they are ascertained. Plaintiffs are informed and believe, and on that basis allege, that each of these fictitiously named defendants is responsible in some manner for the discriminatory actions alleged herein and that each is a resident of the State of Tennessee and thus is subject to the jurisdiction of this Court.

## GENERAL ALLEGATIONS
## THE REQUIREMENTS OF TITLE IX

14. Title IX, enacted in 1972, provides in relevant part:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

20 U.S.C. § 1681(a). The Civil Rights Restoration Act of 1987 made Congress' intent plain that "program or activity," as used in Title IX, applies to any program or activity so long as any part of the public institution receives federal financial assistance. 20 U.S.C. § 1687. Thus, Knox County Schools is subject to Title IX even if none of the funding for either its girls' or boys' athletic programs comes specifically from federal sources.

5

15. In 1975, the Department of Health, Education and Welfare (the predecessor of the United States Department of Education ("DOE")) adopted regulations interpreting Title IX. These regulations are codified at 34 C.F.R. Part 106 (the "Regulations").

16. With regard to athletic programs, § 106.41(a) of 34 C.F.R. provides that interscholastic athletics are included within the "program or activity" requirements of Title IX:

> No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by a recipient ...

17. 34 C.F.R. § 106.41 (c) specifies ten (10) factors that are to be considered in the determination of equal athletic opportunity:

   1. Whether the selection of sports and levels of competition effectively accommodate the interest and abilities of members of both sexes;

   2. The provision of equipment and supplies;

   3. Scheduling of games and practice times;

   4. Travel and per diem allowance;

   5. Opportunity to receive coaching and academic tutoring;

   6. Assignment and compensation of coaches and tutors;

   7. Provision of locker rooms, practice and competitive facilities;

   8. Provision of medical and training facilities and services;

   9. Provision of housing and dining facilities and services; and

6

10. Publicity.

Another factor to be considered is a school's "failure to provide necessary funds for teams for one sex." *Id.*

18. In 1979, the office of Civil Rights of the Department of Education ("OCR") issued a policy interpretation of Title IX and the Regulations. This policy interpretation is found at 44 Fed. Reg. 71413 (1979) (the "Policy Interpretation").

19. The Policy Interpretation provides that, in order to comply with Title IX and 34 C.F.R. § 106.41(c), schools must provide equal athletic opportunities in three general areas: (1) awarding of scholarships (aimed primarily at problems at the intercollegiate level); (2) participation opportunities (including both the number of opportunities and whether the selection of sports and the level of competition effectively accommodate the interests and abilities of members of both sexes); and (3) treatment and benefits. 44 Fed. Reg. at 71414.

20. Under both the Regulations and the Policy Interpretation, compliance in the area of equal treatment and benefits is assessed based on an overall comparison of the male and female athletic programs, including an analysis of factors (2) through (10) of 34 C.F.R. § 106.41 (c) listed above, and an analysis of whether the necessary funds are provided for teams of both sexes.

21. The Regulations require that sponsors of interscholastic and other schoolsponsored athletics (such as Knox County Schools) take such remedial actions as are necessary to overcome the effects of gender discrimination in violation of Title IX. *See* 34 C.F.R. § 106.3(c). On information and belief, any remedial actions which Defendants have taken in the past have been insufficient to satisfy Defendants' obligations under Title IX.

22. The Regulations further require that sponsors of interscholastic and other school-sponsored athletics comply with the Regulations within three years of their effective date (which was July 21, 1975). Now, more than forty-six (46) years later, Defendants have still not fully complied with Title IX.

## THE U.S. CONSTITUTION

23. The Fourteenth Amendment to the United States Constitution requires that a state shall not "deny to any person within its jurisdiction the equal protection of the laws."

24. Under 42 U.S.C. § 1983, Defendants may be held liable for their actions in violating Plaintiffs' daughters' rights under the Fourteenth Amendment.

## INJUNCTIVE RELIEF

25. Plaintiffs are entitled to injunctive relief to end Defendants' unequal, discriminatory and unlawful treatment of female student athletes. Because of Defendants' acts and omissions, Plaintiffs' daughters continue to be deprived of the rights guaranteed

to them by the United States Constitution and the laws of the United States. Failure to grant the injunctive relief requested will result in irreparable harm to Plaintiffs' daughters in that Plaintiffs' daughters' rights will be violated and that Plaintiffs' daughters will never be able to participate in interscholastic and/or other school-sponsored athletics on an equal basis with their male classmates. Accordingly, Plaintiffs do not have an adequate remedy at law for this harm. This threatened harm far outweighs any possible harm that granting injunctive relief might cause Defendants. Finally, the injunctive relief sought would in no way disserve the public interest but, on the contrary, would prevent discrimination based on gender and would promote the goal of full equality before the law.

## ATTORNEYS' FEES

26. Plaintiffs have been required to retain the undersigned attorneys to prosecute this action. Plaintiffs are entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FIRST CLAIM FOR RELIEF: TITLE IX
### (Unequal Treatment and Benefits)
### (Against Knox County Schools Only)

27. Plaintiffs reallege and incorporate herein by this reference paragraphs 1 through 26 inclusive of this Complaint.

28. Knox County Schools, by its conduct, has violated Title IX by knowingly and deliberately discriminating against female students, including the Plaintiffs' daughters,

by failing to provide them with treatment and benefits which are comparable overall to the treatment and benefits provided to male athletes.

29. On information and belief, Plaintiffs allege that Knox County Schools has failed to comply with Title IX by failing to provide their daughters and other female athletes with comparable treatment and benefits including, but not limited to, the following areas:

    (1) Knox County Schools funds athletics in a manner that discriminates against Plaintiffs' daughters and other female athletes. For example, Knox County Schools routinely allows the infusion of more funds for boys' sports as compared to girls' sports. This includes more money for the baseball program at Bearden High School as compared to the softball program at Bearden High School. Knox County Schools requires students at Bearden High School to pay for the opportunity to participate in athletics. On information and belief, plaintiffs daughters and others softball players are required to pay more than their male fellow students at Bearden High School for the opportunity to participate in athletics.

    (2) Knox County Schools discriminates against Plaintiffs' daughters and other female athletes in the provision of equipment and supplies. For example, the softball program at Bearden High School and parents of

10

softball players are required to purchase essential athletic equipment and supplies, including uniforms. As a further example, the baseball program at Bearden High School is provided a superior pitching machine as compared to the softball program at Bearden High School.

(3) Knox County Schools discriminates against Plaintiffs' daughters and other female athletes in the provision of travel and/or per diem. For example, the softball players at Bearden High School are generally required to provide their own private transportation for their away games. If the softball players do not provide for their own transportation, the softball program is required to pay for the use of a bus.

(4) Knox County Schools supplies superior access to superior locker rooms and/or facilities for both practice and competition, to boys as compared to girls. For example, the press box at the baseball facility is superior to the press box at the softball facility. The press box at the baseball facility is part of a permanent brick and mortar two-story enclosed facility which is built on a permanent foundation. The press box provided to the softball program is a much smaller temporary building constructed of wood and not set on a permanent foundation. The permanent press box at the football facility is also superior to the

11

press box at the softball facility and is also set on a permanent foundation. The sound system provided to the baseball program is superior to that provided to the softball program. The baseball facility has superior, and more, seating for spectators. The seating at the baseball facility is set on concrete. The seating at the softball facility is set on grass, dirt and gravel. Some of the seating at the baseball facility is stadium-type. None of the seating at the softball facility is stadium-type. The baseball facility is handicap accessible. For example, it has concrete in spectator areas. The softball facility is not handicap accessible. It has dirt, grass, and gravel in the spectator areas. The baseball program is provided superior dugouts with such amenities as electricity. The much smaller softball dugouts have no electricity. The dugouts at the baseball facility have superior benches as compared to those at the softball facility. The floors in the dugouts at the baseball facility are in superior condition compared to those at the softball facility. The baseball facility has a climate-controlled fieldhouse which includes two locker rooms with restroom facilities and showers for the use of the baseball program. The softball facility has no locker room. The area softball players are provided to change their clothes is in the indoor hitting facility. It is an open area,

requiring the girls to change with no privacy. This open changing area of course has neither restroom facilities, showers, or even running water. This area is not climate controlled like the baseball program's private locker rooms. The baseball program has secure storage for its equipment in its field house and weight training facility. The softball program does not have secure storage at its fieldhouse or weight training facility, since it has neither a field house nor a weight training facility. The baseball program is provided a coaches' office in the fieldhouse. The softball program is provided no coaches' office, either in a fieldhouse (since they have no fieldhouse) or anywhere else. The concession stand at the baseball facility, which is a permanent building on a permanent foundation and has running water and permanent electricity, is superior to the concession trailer provided at the softball facility, which is temporary, has no running water and is supplied electricity through an extension cord. The football facility has permanent concession stands on permanent foundations with running water and permanent electricity. The baseball facility has seating for consuming concessions. The softball facility has no seating for consuming concessions. The baseball facility has public restrooms at the facility. The softball facility has

13

no public restrooms at the facility. Players, coaches and spectators are required to climb a hill to the soccer facility to use the restroom. Even those restrooms are frequently locked, which means that players, coaches and spectators must then go to the school building to use a restroom, but only if they can find an unlocked door at the school building. The football facility has public restrooms at the facility. The baseball facility has drinkable running water. The softball facility does not have drinkable running water. The football facility does have drinkable running water. The baseball facility has running water for handwashing. The football facility has running water for handwashing. The softball facility does not have running water for handwashing. The lights at the baseball facility are superior to the lights at the softball facility. The light fixtures as the baseball facility are superior to those at the softball facility, as are the poles. Some of the poles at the softball facility are literally leaning, creating a safety hazard for players, coaches and spectators. The maintenance at the baseball facility is superior to the maintenance at the softball facility. The maintenance at the football facility is superior to the maintenance at the softball facility. The field at the softball facility is uneven, creating a safety hazard for the players, and the ground at the softball

14

outfield fence is eroding, creating an additional safety hazard for the players. The infield material at the baseball facility is superior to the infield material at the softball facility. The baseball and football programs are provided superior maintenance equipment as compared to the softball program. The baseball program has a five-lane enclosed hitting facility at its field. The softball program has a two-land enclosed hitting facility at its field. Part of the softball hitting facility is used for the open changing area the softball players are required to use as a "locker room." No part of the baseball hitting facility is used for a changing area, open or private, since the baseball program has its own separate climate-controlled field house with two private locker rooms complete with showers and restroom facilities. The baseball facility has a solid outfield fence wall. The softball facility has an inferior chainlink outfield fence. The baseball facility has major league-type foul poles. The softball facility has inferior foul poles as compared to those at the baseball facility. The baseball facility has a large, ten-inning scoreboard. The softball facility has a much smaller, inferior one-inning scoreboard. The baseball program has a mobile batting practice cage. The softball program has no mobile batting practice cage. The baseball program is provided secure

15

home and visitor bullpens for the safety of players warming up. The softball program has no such safety feature, for either home or visitor players. The baseball facility has security lights for the safety and security of the baseball players, coaches, fans and facilities. The softball facility has no such feature for the safety and security of the softball players, coaches, fans and facilities. The baseball facility has a permanent foundation for the backstop with protective padding. There is no foundation for the backstop at the softball facility. There is no protective padding on the backstop at the softball facility. The backstop at the baseball facility is constructed with poles and major league-type netting. The backstop at the softball facility is inferior as compared to the baseball backstop, constructed with inferior pipes and chainlink. The baseball program has multiple tarps, including a full infield tarp. The softball program has no tarps. The signage at the baseball facility is superior to that at the softball facility. The baseball facility is enclosed as a separate facility with a perimeter fence, with brick columns and wrought iron fence at the entrance, creating a ball park ambiance superior to that at the softball facility, which has no brick columns or wrought iron fence, but rather an inferior chainlink fence that does not fully enclose the facility as a separate facility.

16

(5) Knox County Schools discriminates against Plaintiffs' daughters and other female athletes in the provision of training facilities and services. For example, the baseball program at Bearden High School has a weight training facility. The softball program at Bearden High School has no weight training facility.

30. The imbalance in the treatment of female and male athletes at Knox County Schools as detailed above, demonstrates Knox County Schools' intentional and conscious failure to comply with Title IX.

31. Knox County Schools' conduct has persisted despite the mandates of the Regulations, particularly 34 C.F.R. §§ 106.3(a) and 106.41(d), and the Policy Interpretation.

32. Knox County Schools' conduct violates 20 U.S.C. § 1681 *et seq.*, as interpreted by 34 C.F.R. §§ 106.31 and 106.41 and the Policy Interpretation thereof.

## SECOND CLAIM FOR RELIEF: EQUAL PROTECTION
**(Against All Defendants**)

33. Plaintiffs reallege and incorporate herein by this reference paragraphs 1 through 32 inclusive of this Complaint, including all of the factual allegations contained in paragraph 29 of this Complaint.

34. Defendants, by their persistent and widespread practices, customs, and deeply embedded traditional ways of carrying out their policies, through either action or

inaction, have failed to provide Plaintiffs' daughters with equivalent treatment and benefits as they have the male athletes (as detailed above), and have purposefully and illegally discriminated against Plaintiffs' daughters and other female students on the basis of gender, and have intentionally and illegally deprived them of their rights to equal protection secured by the Fourteenth Amendment to the United States Constitution.

35. Defendants have illegally failed and refused to remedy the unequal treatment and benefits received by Plaintiffs' daughters and other female athletes as compared to male athletes at Knox County Schools. Therefore, Defendants' actions constitute a knowing and illegal disregard for Plaintiffs' daughters' constitutional rights.

36. Section 1983 of Title 42 of the United States Code provides, in part: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

37. When Defendants engaged in the improper actions described above, they were acting under color of law for purposes of the Equal Protection Clause of the United States Constitution and 42 U.S.C. § 1983. Under this section, the Defendants are liable for their violations of the Plaintiffs' daughters' constitutional rights under the Fourteenth Amendment.

18

# RELIEF REQUESTED

WHEREFORE, on each of their claims, Plaintiffs respectfully pray that this Court:

A. Enter an order declaring that Defendants have engaged in a past and continuing pattern and practice of discrimination against female students, including Plaintiffs' daughters, on the basis of gender in violation of Title IX and the regulations promulgated thereunder (including unequal treatment and benefits), and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

B. Issue a permanent injunction (a) restraining Defendants and their officers, agents, employees, successors and any other persons acting in concert with them, from continuing to maintain practices and policies of discrimination against Plaintiffs' daughters on the basis of gender, and (b) requiring Defendants, immediately upon issuance of the injunctive order, to adopt and implement a budget and plan which corrects and remediates Defendants' violation of Title IX and the Fourteenth Amendment. Such a plan should include, among other things, providing Plaintiffs' daughters and other female athletes with treatment and benefits comparable to those provided to male athletes at Knox County Schools.

C. Grant an expedited hearing and ruling on the permanent injunction request in paragraph B above.

D. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

E. Order such other and further relief as the Court deems appropriate.

F. Designate that the trial take place before the U. S. District Court in Knoxville, Tennessee.

Dated: June 5, 2022

Respectfully submitted,

**SCHILLER LAW FIRM**

**s/ Samuel J. Schiller**
**SAMUEL J. SCHILLER**
Tennessee Attorney Registration #021810
Oklahoma Bar Association #016067
Suite 200, 4113 Cumby Road
Cookeville, TN 38501
Telephone: (931) 528-5050
Email: sjs@schillerlawfirm.com
*Counsel for Plaintiffs*

SJS:km/ees